UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

August 25, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Samantha R. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2692-BAH

Dear Counsel:

On October 19, 2022, Plaintiff Samantha R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive filings[1] (ECFs 13 and 15), and Plaintiff's alternative motion for remand (ECF 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Defendant's motion for summary judgment, GRANT Plaintiff's alternative motion for remand, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") a Title XVI application for Supplemental Security Income ("SSI") benefits on May 29, 2019.[2] *See* Tr. 18, 229–38. In both applications, she alleged a disability onset of May 24, 2019. Tr. 18, 229–38. The claims were denied initially and on reconsideration. Tr. 68–123. On June 22, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 36–63. Following the hearing, on January 7, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a brief and an alternative motion for remand, and Defendant filed a motion for summary judgment. ECFs 13, 15.

[2] The record before the Court does not include Plaintiff's DIB application, and the SSI application lists July 1, 2019, as the application date. Because neither party disputes the ALJ's notation that Plaintiff protectively filed both applications on May 29, 2019, the Court proceeds with May 29, 2019, as the operative application date. Tr. 18.

*Samantha R. v. Kijakazi*
Civil No. 22-2692-BAH
August 25, 2023
Page 2

Social Security Act[3] during the relevant time frame. Tr. 15–35. The Appeals Council denied Plaintiff's request for review, Tr. 1–7, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 24, 2019, the alleged onset date." Tr. 21. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "migraine headaches; pseudotumor cerebri; idiopathic intracranial hypertension; and depressive disorder." *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairment of "unspecified asthma." *Id*. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant has the residual functional capacity to perform less than full range of medium work except lifting 50 pounds occasionally and 25 pounds frequently; carrying 50 pounds occasionally and 25 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours; push/pull as much as can lift/carry. The claimant is limited to no climbing of ladders, ropes or scaffolds and no more than occasional exposure to loud noise, bright sunlight, fumes/dusts/odors/gases/poor ventilation, to extreme temperatures, vibration, wetness, humidity and must avoid all hazards such as moving machinery and unprotected heights. She is limited to no more than occasional use of computers or other work requiring viewing a video terminal screen or monitor (NOTE: this is based on claimant's testimony that she can only use computer or video display for a short period of time or will get a migraine. I don't find this necessarily fully supported as a limitation in the record but considering her subjective complaints, I included it. She can perform simple routine tasks but no

---

[3] 42 U.S.C. §§ 301 et seq.

> production work, by which I mean rapid assembly line work where coworkers are side by side and the work of one affects the work of others. She is limited to work with no strict hourly quotas.

Tr. 23–24. The ALJ determined that Plaintiff could not perform any past relevant work but could perform jobs existing in significant numbers in the national economy, such as the job of Linen Room Attendant (DOT[4] #222.387-030), Counter Supply Worker (DOT #319.687-010), and Marker (DOT #209.587-034). Tr. 28–29. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 29.

## III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ: (1) failed to adequately address evidence related to her severe migraines; (2) failed to adequately address evidence related to her vision impairment (including at step three); and (3) erroneously evaluated her reported activities of daily living. ECF 13, at 3–22. Defendant counters that: (1) the ALJ properly determined that Plaintiff could perform work despite her migraine headaches and subject to certain environmental limitations; (2) Plaintiff's vision impairment was properly assessed as a non-severe impairment and "did not rise to listing level severity"; and (3) the ALJ properly "considered [Plaintiff's] reports of activities in evaluating her symptoms and included qualifying statements describing the extent to which she

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

could perform the activities on a sustained basis in an 8-hour workday." ECF 15-1, at 4–21.

The Court begins by discussing Plaintiff's third argument, as it finds this argument dispositive. An ALJ evaluates a claimant's subjective symptoms using a two-part framework. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c)). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id*. (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id*. (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). This "determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Id*. (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

It is within an ALJ's discretion to discount a claimant's statements when the ALJ is faced with countervailing evidence that the claimant is performing daily activities which contradict the claimant's self-assessment. *See Eiker v. Astrue*, No. CBD-11-3584, 2013 WL 2149755, at *5 (D. Md. May 15, 2013). However, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). In this respect, the Court has recognized that an ALJ errs by rejecting a claimant's subjective complaints of debilitating pain solely because the claimant can perform the most basic of daily activities:

> "When assessing the effect of claimants' activities of daily living on their physical RFC, ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy." *Eiker v. Astrue*, No. CIV.A. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013). "[A] claimant need not be constantly bedridden or completely incapacitated to be found disabled." *Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir.1980)). Individual or sporadic instances of activity do not necessarily demonstrate a person's ability to work on a sustained basis for eight hours per day. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Further, the ability to engage in some light activity does not necessarily translate into the ability to do substantial gainful activity. *See Morgan*, 142 F. App'x at 729 (finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper an ALJ's adverse credibility judgment against a claimant who would load dishwasher and fold clothes, and went to Aruba on his

>honeymoon), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on plaintiff's ability to do housework "at her own pace with periods where no work was performed").

*Janice M. v. Kijakazi*, No. 21-1715-BAH, 2022 WL 4120790, at *4 (D. Md. Sept. 9, 2022) (quoting *Coreen T. v. Kijakazi*, No. CBD-19-3372, 2022 WL 252961, at *7 (D. Md. Jan. 26, 2022)).

In the RFC assessment here the ALJ summarized Plaintiff's allegations by noting Plaintiff's testimony that "she was unable to work due to vision disturbances." Tr. 24. The ALJ also acknowledged that Plaintiff endorsed "dizziness," "pain from her neck and into her arm," "headaches, which were exacerbated by overhead lighting, computer screens and loud noises," stress-induced migraines, and "high pressures in her head" that disrupt her vision. Tr. 24–25. In evaluating this testimony, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 25. The ALJ then provided the following analysis of Plaintiff's activities of daily living:

>Specifically, she reported that she cares for her daughter and her dog. She has no problems with her personal care. She is able to make simple meals and she can do her household chores. She drives and she can use public transportation. She shops in stores and over her phone. She can manage her personal finances. She socializes with others (5E). These activities require significant physical and mental demands, which are not consistent with the level of limitation the claimant alleges. Accordingly, I find that the claimant's activities of daily living suggest a greater degree of functional capacity than claimed.

Tr. 25. This assessment of Plaintiff's daily activities constitutes error for several reasons.

First, most of the activities, though accurately described by the ALJ, are basic in nature, with some requiring nothing more than minimal attention (i.e., managing personal finances) and others requiring only a modicum of physical exertion (i.e., driving, using public transportation, and shopping in stores). *See id.* This Court has recognized that absent additional explanation by an ALJ, these types of activities lack probative value in assessing a claimant's mental and physical abilities to sustain full-time work. *See, e.g.*, *Janice M.*, 2022 WL 4120790, at *5 (recognizing that paying bills does not require "more than a fleeting moment of attention" and that maintaining personal care, preparing light meals, driving, shopping in stores, utilizing a computer, and reading daily do not require "more than minimal physical exertion"). Accordingly, absent a more detailed explanation by the ALJ in this case, it is unclear how the performance of any of these activities contradicts Plaintiff's subjective complaints of dizziness, neck pain, headaches and migraines that disturbed her vision.

*Samantha R. v. Kijakazi*
Civil No. 22-2692-BAH
August 25, 2023
Page 6

      In addition to the failure to explain how these *types* of activities are inconsistent with Plaintiff's subjective complaints, the ALJ also failed to consider "the *extent* to which" Plaintiff can perform many of these activities. *Woods*, 888 F.3d at 694 (emphasis in original). For instance, the ALJ noted that Plaintiff drives and uses public transportation but failed to note Plaintiff's statement that she "cannot drive when" her vision is "messed up," when she is "confused," when her "light sensitivity is high," or when "one side of [her] body feels 'asleep.'" Tr. 297. Additionally, the ALJ failed to note that Plaintiff's performance of "household chores" is limited to just "several hours—once or twice a week," and that Plaintiff's boyfriend handles the vacuuming and bathroom cleaning. Tr. 296. While the ALJ correctly noted that Plaintiff shops in stores, Plaintiff's own statement makes clear that she never performs this task alone. Tr. 297. Moreover, although the ALJ correctly noted that Plaintiff cooks, the ALJ failed to add that Plaintiff does so only "weekly" and that meals are prepared by other household members on most days. *Id.* The ALJ also observed that caring for Plaintiff's daughter and dog "require[s] significant physical and mental demands" on Plaintiff's part. Tr. 25. But the ALJ failed to consider that Plaintiff does not bear these responsibilities singlehandedly—indeed, Plaintiff's function report makes clear that her boyfriend and his daughter assist Plaintiff in "tend[ing] to" Plaintiff's daughter's needs. Tr. 295.

      These qualifying statements, contained in Plaintiff's function report, reflect Plaintiff's position that many of the activities she performs are curtailed due to her impairments. Tr. 286–302. While the ALJ need not have accepted these statements at face value, the ALJ was nonetheless required to evaluate them. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (affirming reversal of ALJ's decision where the ALJ "disregarded" a claimant's "qualification of his activity levels" because an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995))). Because the ALJ failed to evaluate these qualifying statements, the ALJ's decision lacks "an accurate and logical bridge" from the evidence to the decision's conclusions. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 100 (4th Cir. 2020) (holding that substantial evidence did not support an ALJ's conclusion that a claimant's subjective complaints were inconsistent with her daily activities because "[t]he ALJ selectively cited evidence concerning tasks which [the claimant] was capable of performing' and improperly disregarded her qualifying statements'" (quoting *Hines*, 453 F.3d at 565)).[5]

---

[5] In addition to the errors noted above, the Court also observes that the ALJ's characterizations of Plaintiff's daily activities may be internally inconsistent. While assessing Plaintiff's mental impairments, the ALJ noted that Plaintiff's "activities of daily living are *fairly normal*." Tr. 27 (emphasis added). Just three paragraphs later, the ALJ stated that Plaintiff's function report "showed she was capable of *robust* activities of daily living." *Id.* (emphasis added). "An ALJ's opinion that is internally inconsistent frustrates meaningful review and requires remand." *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019) (citing *Hester v. Colvin*, No. 7:14-CV-163-BO, 2015 WL 3409177, at *2 (E.D.N.C. May 27, 2015)), *report and recommendation adopted sub nom. Mallet v. Saul*, 2019 WL 2980032 (E.D.N.C. July 8, 2019). The ALJ's characterization of Plaintiff's activities as both "fairly normal" and "robust"

*Samantha R. v. Kijakazi*
Civil No. 22-2692-BAH
August 25, 2023
Page 7

Because the ALJ erroneously evaluated Plaintiff's activities of daily living, substantial evidence does not support the ALJ's decision. *See Arakas*, 983 F.3d at 100. Therefore, I will remand Plaintiff's case to the SSA. On remand, the ALJ should engage in a more fulsome analysis of whether the type and extent of the activities which Plaintiff can perform suggests an ability to "engage in full-time work on a sustained basis." *Id.* at 101.

V.   **CONCLUSION**

For the reasons set forth herein, Plaintiff's alternative motion for remand, ECF 13, is GRANTED and Defendant's motion for summary judgment, ECF 15, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

could be read as an internal inconsistency that frustrates this Court's review on appeal. Accordingly, the ALJ is directed to clarify this point on remand.